# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| PAULA FOOTE, individually and on behalf of others similarly situated, | : : : : | CIVIL ACTION FILE NO. 1:19-cv-04381-LMM |
| Plaintiff, | : : | |
| v. | : : | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION, CAR PROTECTION USA D/B/A CLEAR PATH and JOHN DAVIS, | : : : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : : / | |

## Preliminary Statement

1. Plaintiff Paula Foote brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of automated and prerecorded telephone calls, which, Congress found, were rightly regarded as in invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Ms. Foote alleges that Matrix Auto Warranty Solutions, Inc. ("Matrix") commissioned automated and pre-recorded telemarketing calls to Plaintiff and other putative class members without their consent. Car Protection

USA d/b/a Clear Path ("Clear Path"), and its owner John Davis, who conducted the activities of Clear Path, sent the pre-recorded call pursuant to a contract it has with Matrix.

3. The Plaintiff and putative class members never consented to receive these calls. Because automated dialing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal robocalls from or on behalf of the defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Paula Foote resides in this District.

6. Defendant Car Protection USA d/b/a Clear Path is a California corporation. Mr. Davis, the owner of Clear Path has represented to Plaintiff's counsel that the current principal place of business for Clear Path is 999 Corporate Drive, Suite 100 in Ladera Ranch, CA 92694 and the current registered agent is Robert Hill.

7. Defendant John Davis is the owner and operator of Clear Path.

8. Defendant Matrix Warranty Solutions, Inc. is a corporate entity registered in Nevada, yet maintains its principal place of business at 3100 McKinnon Street, Suite 440, Dallas, Texas 75201. It regularly conducts business in this District, as it attempted to do with the Plaintiff.

### Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over the defendants because they engaged in nationwide telemarketing conduct, including into this District. Clear Path, through Mr. Davis, made the pre-recorded telemarketing call into this District. Matrix, attempting to finalize a sale to the Plaintiff as a result of the pre-recorded telemarketing call, itself directly made a telemarketing call into this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned into this District.

### TCPA Background

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See*

47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be

4

obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

18. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

19. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

20. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

5

21. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

22. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

23. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018),

https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

24. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

25. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited September 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

26. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited September, 2019).

27. Mr. Davis is the owner and operator for Clear Path and is liable for its conduct.

28. Under the TCPA, an individual such as Mr. Davis, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be

the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47. U.S.C. § 217 (emphasis added).

29.     When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

30.     Mr. Davis personally participated in the actions complained of by (a) selecting some of the phone numbers that would be called; (b) choosing the pre-recorded messages that would be used; (c) selecting the dialing equipment used to send those pre-recorded messages; (d) personally authorizing the conduct and being charged with its compliance with state and federal telemarketing laws.

## Factual Allegations

31. Matrix Warranty provides extended warranty services to consumers.

32. To generate business through sales, Matrix Warranty relies on telemarketing.

33. One of Matrix Warranty's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

34. Matrix Warranty also strategies for telemarketing involves the use of pre-recorded messages to solicit business by third parties.

Call to The Plaintiff Foote

35. Plaintiff Foote is a "person" as defined by 47 U.S.C. § 153(39).

36. Ms. Foote's telephone number, (404) 707-XXXX, is registered to a cellular telephone service.

37. Ms. Foote was called by Clear Path on August 16, 2019.

38. When Ms. Foote answered, a pre-recorded message was played.

39. The pre-recorded message advertised warranty services offered by Clear Path.

40. The purpose of the calls was to sell those warranty services to Ms. Foote.

41. In fact, the Plaintiff spoke with a "Karen White" who offered her an Element Warranty protection plan.

42. Plaintiff had not consented to receive Defendants' calls prior to the receipt of these calls.

## Matrix's Liability

43. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

44. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

45. In fact, the Federal Communication Commission has instructed that sellers such as Matrix may not avoid liability by outsourcing telemarketing to third parties such as Clear Path.

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for

10

telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

46. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

47. Matrix is liable for the calls initiated by Clear Path.

48. Matrix hired Clear Path to sell its services using telemarketing calls.

49. In fact, Clear Path can bind Matrix in a warranty contract, a hallmark of agency.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

50. Matrix knew (or reasonably should have known) that Clear Path was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

51. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

52. In fact, Matrix has been named in multiple lawsuits for the calling conduct of its third-party call centers.

53. Matrix also controls the calling conduct of its third-party call centers by:

    a. Limiting the geographic areas to which they can make calls;

    b. Instructing them on the amount of leads they will accept;

    c. Dictating the specific contracts and warranties that they can offer; and

    d. Prohibiting them from calling certain numbers.

54. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable

consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

55. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

56. The Class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using the same, or similar dialing system used to contact the Plaintiff, or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

57. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. The Class as defined above is identifiable through phone records and phone number databases.

59. The potential Class members number at least in the thousands. Individual joinder of these persons is impracticable.

60. The Plaintiff is a member of the Class.

61. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using automated calls or a pre-recorded voice to contact putative class members cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

62. The Plaintiff's claims are typical of the claims of class members.

63. The Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and counsel skilled and experienced in class actions, including TCPA class actions, represents her.

64. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

65. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

66. The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Violation of the TCPA's Automated Call provisions

67. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

68. Defendants' call was made without the prior express consent, or the prior express written consent, of the called parties. 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8)

69. The Defendants violated the TCPA by (a) using an automatic telephone dialing system or a prerecorded voice to make calls to cellular telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

70. The Defendants' violations were willful and/or knowing.

71. The Plaintiff also seeks injunctive relief prohibiting Defendants from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance;

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance;

C. Because of Defendants' violations of the TCPA, Plaintiff seeks for herself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: December 3, 2019         PLAINTIFF, individually and
                                on behalf of others similarly situated,

                                By:

                                */s/ Anthony I. Paronich*
                                Anthony I. Paronich, *pro hac vice*
                                Paronich Law, P.C.
                                350 Lincoln Street, Suite 2400
                                Hingham, MA 02043
                                [o] (617) 485-0018
                                [f] (508) 318-8100
                                anthony@paronichlaw.com

                                Steven H. Koval
                                Georgia Bar No. 428905
                                3575 Piedmont Road
                                Building 15, Suite 120
                                Atlanta, GA  30305
                                Telephone:  (404) 513-6651
                                Facsimile: (404) 549-4654
                                shkoval@aol.com

                                Andrew Heidarpour, *pro hac vice*
                                1300 Pennsylvania Ave., NW 190-318
                                Washington, DC 20004
                                Telephone: 202-234-2727
                                aheidarpour@hlfirm.com

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D**

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with

14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

                                /s/ *Anthony Paronich*
                                Anthony Paronich

17

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 19, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Anthony I. Paronich*
Anthony I. Paronich
